IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JON SNYDER and LINDA SNYDER,

        Plaintiffs,

      v.                                    Case No. CV-07-1081-ST

DAVOL, INC.; C.R. BARD, INC.; and LEGACY     FINDINGS AND
HEALTH SYSTEM, dba Meridian Park Hospital,    RECOMMENDATIONS

        Defendants.

STEWART, Magistrate Judge:

## INTRODUCTION

On May 22, 2007, plaintiffs commenced this action in Multnomah County Circuit Court as *Jon Snyder and Linda Snyder v. Davol, Inc.; C.R. Bard, Inc.; and Legacy Health System, dba Meridian Park Hospital*, Civil Case No. 0705-05853, alleging product liability and negligence claims against each of the three corporate defendants, Davol, Inc. ("Davol"), C.R. Bard, Inc. ("Bard") and Legacy Health System, dba Meridian Park Hospital ("Legacy"). Plaintiffs' claims

1 - FINDINGS AND RECOMMENDATIONS

arise from the use of an allegedly defective "Composix Kugel hernia patch, lot no. 43GOD273" during an incisional hernia repair performed on Jon Snyder on or about May 23, 2005. Davol is a wholly owned subsidiary of Bard, the manufacturer and/or distributor of the Kugel patch. Legacy is the medical facility where the hernia repair was performed.

On July 25, 2007, defendants Davol and Bard filed a Notice of Removal to this court, alleging jurisdiction based on diversity of citizenship under 28 USC § 1332. Although plaintiffs are Oregon citizens and Legacy is an Oregon corporation, defendants Davol and Bard contend that diversity jurisdiction exists because Legacy was not a proper party to this case due to fraudulent joinder. Legacy did not join in the Notice of Removal, has taken no position on the pending motions, and has not yet filed a responsive pleading.[1]

On July 26, 2007, defendants Davol and Bard filed a Notice of Tag-Along with the Judicial Panel on Multidistrict Litigation (the "MDL Panel"), asserting that this case involves common questions of fact with other actions in MDL No. 1842, *In Re Kugel Mesh Hernia Patch Products Liability Litigation*. The following day, defendants Davol and Bard filed a Motion to Stay All Proceedings Pending a Transfer Decision by the Judicial Panel on Multidistrict Litigation (docket # 6) in this court.

On August 10, 2007, the MDL Panel conditionally transferred 24 cases pending in eight states, including this case, to the United States District Court for the District of Rhode Island for coordinated or consolidated pretrial proceedings pursuant to 28 USC § 1407. *See* Conditional Transfer Order (CTO-3) in MDL No. 1842, *In Re Kugel Mesh Hernia Patch Products Liability*

---

[1] This court has allowed Legacy an extension of time to answer until 20 days after a final ruling on defendants' motion to stay. *See* Minute Order (docket # 28).

2 - FINDINGS AND RECOMMENDATIONS

*Litigation* (docket # 15). On that same date, plaintiffs filed a Motion to Remand (docket # 11) in this case, asserting the lack of diversity jurisdiction because Legacy was properly joined.

Both plaintiffs and Legacy filed timely Notices of Opposition to the Conditional Transfer Order. Rose Aff, Exhibits 2 and 3. As a result, the Conditional Transfer Order is stayed, and this court's jurisdiction continues until further order of the MDL Panel. Panel Rule 1.5;[2] *State of Rio de Janeiro of Federated Republic of Brazil v. Phillip Morris, Inc.*, 239 F3d 714, 716 (5th Cir 2001); *General Elec. Co. v. Byrne*, 611 F2d 670, 673 (7th Cir 1979).

Plaintiffs' Motion to Remand (docket # 11) and the competing Motion to Stay by defendants Davol and Bard (docket # 6) are now before this court. The issue is whether this court has subject matter jurisdiction over plaintiffs' claims. Defendants Davol and Bard contend that Legacy is a fraudulently joined defendant whose presence does not defeat diversity jurisdiction. They also argue that plaintiffs' claims are procedurally misjoined and should be severed, with the negligence claims remanded to state court and the product liability claims remaining in federal court and transferred into the multidistrict litigation in Rhode Island.

This court concludes that plaintiffs are entitled to have this procedural conundrum resolved in their favor. Accordingly, this court recommends that plaintiffs' Motion to Remand (docket # 11) should be granted and defendants' Motion to Stay (docket # 6) should be denied as moot.

///

---

[2] Panel Rule 1.5 provides that: "The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 USC § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court."

3 - FINDINGS AND RECOMMENDATIONS

## FINDINGS

### I. Fraudulent Joinder

#### A. *Meyers* Methodology

The parties' competing motions to remand and to stay pose the inevitable tension between plaintiffs who wish to remain in state court and defendants who prefer federal court. Superimposed over that tension is the fact that this case is subject to a Conditional Transfer Order in MDL litigation. Defendants urge that this case should be transferred to Rhode Island as a tag-along action in MDL-1842 because Legacy was fraudulently joined as a defendant in order to defeat diversity jurisdiction. Plaintiffs insist that Legacy was not fraudulently joined, that they are entitled to an immediate remand to state court due to a lack of jurisdiction, and that they should not be forced into MDL litigation in a distant court.

District courts are divided as to whether to address the competing remand and stay motions together or separately, and if separately, in what order, and whether to defer consideration of the motions to the MDL Panel. *Meyers v. Bayer AG*, 143 F Supp2d 1044, 1047-48 (ED Wis 2001) (collecting cases). As it has in previous cases, this court will follow the analytical framework articulated in *Meyers*.

*Meyers* outlines a three step methodology for deciding competing motions to remand and stay in cases involving pending transfer motions or conditional transfer orders in multidistrict litigation:

> [A] court should first give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court.

>   If, on the other hand, the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding.
>
> \*        \*        \*
>
>   Only if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred should the court proceed to the third step and consider the motion to stay.

*Id* at 1049.

This court concludes that the jurisdictional issue is not factually or legally difficult and that defendants Davol and Bard have failed to show Legacy was fraudulently joined. Accordingly, this case should be remanded to Multnomah County Circuit Court.

### B. Preliminary Assessment of the Jurisdictional Issue

Defendants' removal is premised upon diversity jurisdiction under 28 USC § 1332. Plaintiffs are citizens of Oregon and Legacy is an Oregon corporation, while defendants Davol and Bard are corporate defendants with their primary places of business outside of Oregon. Defendants Davol and Bard did not obtain Legacy's joinder in the removal, asserting that Legacy was fraudulently joined and, therefore, was not required to join in the removal.

In deciding a motion to remand, the court looks to whether the case was properly removed to federal court in the first instance. *Salveson v. Western States Bankcard Ass'n*, 731 F2d 1423, 1426 (9th Cir 1984). "The burden of establishing federal jurisdiction is placed on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Id* (citations omitted). "Because of the 'Congressional purpose to restrict the jurisdiction of the federal courts on removal,' . . . federal jurisdiction 'must be rejected if there is any doubt as to

the right of removal in the first instance.'" *Duncan v. Steutzle*, 76 F3d 1480, 1485 (9th Cir 1996) (citations omitted).

In this case, the question of whether removal was proper hinges on the question of whether Legacy was fraudulently joined as a defendant, the issue to which this court now turns.

### C. Fraudulent Joinder

"Fraudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. General Foods Corp.*, 811 F2d 1336, 1339 (9th Cir 1987). The burden of proving that joinder of a non-diverse party is a fraudulent attempt to defeat removal rests with the removing party. *Boyer v. Snap-On Tools Corp.*, 913 F2d 108, 111 (3rd Cir 1990), *cert denied*, 498 US 1085 (1991); *Carriere v. Sears, Roebuck and Co.*, 893 F2d 98, 100 (5th Cir), *cert denied*, 498 US 817 (1990). In considering a motion to remand, the court must:

> resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff. . . . "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court."

*Boyer*, 913 F2d at 111, quoting *Coker v. Amoco Oil Co.*, 709 F2d 1433, 1440-41 (11th Cir 1983).

Normally, courts "'look only to a plaintiff's pleadings to determine removability.'" *Ritchey v. Upjohn Drug Co.*, 139 F3d 1313, 1318 (9th Cir), *cert denied* 525 US 963 (1998), quoting *Gould v. Mutual Life Ins. Co. of N. Y.*, 790 F2d 769, 773 (9th Cir), *cert denied*, 479 US 987 (1986). However, "[w]here fraudulent joinder is an issue, [courts] will go somewhat further.

'The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent.'" *Id* (citations omitted). However, "[f]raudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F3d 1203, 1206 (9th Cir 2007), *citing Pampillonia v. RJR Nabisco, Inc.*, 138 F3d 459, 461 (2nd Cir 1998).

Although free to submit facts showing Legacy's joinder to be fraudulent, defendants Davol and Bard have not done so. Rather, they argue only that the Complaint fails to state a products liability claim against Legacy. Accordingly, the court's analysis is similar to a motion to dismiss and presents a question of law as to whether there is "even a possibility that a state court would find the complaint states a cause of action" against Legacy. *Boyer*, 913 F2d at 111.

Defendants' argument centers on their assertion that plaintiffs' products liability claim against Legacy (First Claim) is not viable under Oregon law. Specifically, they contend that Legacy is not a "seller" of the allegedly defective Kugel patch and, therefore, cannot be sued under Oregon's product liability statute. In Oregon, a product liability civil action is:

> a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of: (1) Any design, inspection, testing, manufacturing or other defect in a product; (2) Any failure to warn regarding a product; or (3) Any failure to properly instruct in the use of a product.

ORS 30.900.

ORS 30.920 specifically governs strict liability by the seller of a product:

> (1) One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the property of the user or consumer is subject to liability for physical harm or damage to property caused by that condition, if:

7 - FINDINGS AND RECOMMENDATIONS

> (a) The seller or lessor is engaged in the business of selling
> or leasing such a product; and
> (b) The product is expected to and does reach the user or
> consumer without substantial change in the condition in
> which it is sold or leased.
> (2) The rule stated in subsection (1) of this section shall apply,
> even though:
> (a) The seller or lessor has exercised all possible care in the
> preparation and sale or lease of the product; and
> (b) The user, consumer or injured party has not purchased
> or leased the product from or entered into any contractual
> relations with the seller or lessor.

With only minor changes, this statute codifies RESTATEMENT (SECOND) OF TORTS, § 402A (1965), and must be "construed in accordance with the RESTATEMENT (SECOND) OF TORTS § 402A, Comments a to m (1965)." ORS 30.920(3). This statute is consistent with prior Oregon case law, which has applied § 402A in strict liability cases since its adoption by *Heaton v. Ford Motor Co.*, 248 Or 467, 470, 435 P2d 806, 808 (1967). *Hoyt v. Vitek, Inc.*, 134 Or App 271, 281, 894 P2d 1225, 1230 (1995).

> The justification for the strict liability has been said to be that the
> seller, by marketing his product for use and consumption, has
> undertaken and assumed a special responsibility toward any
> member of the consuming public who may be injured by it; that the
> public has the right to and does expect . . . that reputable sellers
> will stand behind their goods; that public policy demands that the
> burden of accidental injuries caused by products intended for
> consumption be placed upon those who market them, and be
> treated as a cost of production against which liability insurance can
> be obtained; and that the consumer of such products is entitled to
> the maximum of protection at the hands of someone, and the
> proper persons to afford it are those who market the products.

RESTATEMENT (SECOND) OF TORTS, § 402A cmt. c.

In order to be liable under the Oregon statute, the "seller or lessor" of the product must be "engaged in the business of selling or leasing [the] product." ORS 30.920(1)(a). Davol and

Bard assert that Legacy (doing business as Meridian Park Hospital) is not solely or primarily "in the business of selling" Kugel patches and, therefore, cannot successfully be sued for strict products liability under that statute.

Plaintiffs disagree, pointing to *Docken v. Ciba-Geigy*, 86 Or App 277, 739 P2d 591 (1987), in which the personal representative of an estate brought claims for negligence and strict products liability against the prescribing physician, pharmacy, and manufacturer of a drug that allegedly caused decedent's death. The trial court dismissed the claims for failure to allege ultimate facts sufficient to constitute claims for relief. The Court of Appeals upheld dismissal of the strict product liability claim against the pharmacy and doctor, but noted that:

> [P]laintiff failed to allege that [the physician and pharmacy] were in the business of selling the drug and, as to [the physician], failed to allege that he sold the drug. When plaintiff amended the complaint, she had an opportunity to plead those facts but did not. . . . [B]ecause those facts were not pleaded, plaintiffs' complaint failed to state a cause of action in strict product liability against them.

*Id* at 282, 739 P2d at 594.

Plaintiffs argue that this language provides some authority that Oregon courts would allow a plaintiff to allege that a hospital (similar to a pharmacy) was the "seller" of a medical device, as is alleged here. This case by no means provides a definitive answer to the issue of the propriety of a strict products liability claim against a hospital in Oregon. Nevertheless, plaintiffs have carefully crafted their pleadings to avoid the accusation that they did not properly allege such a claim, assuming that such a claim would be viable. Plaintiffs allege that Legacy provided "medical care, treatment and consultations to patients" and "distributed, provided and sold the Kugel patch to plaintiff Jon Snyder and/or his surgeons." Complaint, ¶¶ 3, 8. Plaintiffs further

allege that Legacy received notices of recalls of the Kugel patch on or about December 22, 2005, and March 31, 2006, but failed to warn or otherwise notify Jon Snyder of the potential risks and potential for catastrophic failure of the product. *Id*, ¶¶ 9-12, 18-19. The Kugel patch placed into Jon Snyder failed on or about September 2006, "resulting in shards of plastic and mesh perforating and strangling Jon Snyder's bowel resulting in infection and necrosis of his bowel and abdominal tissues." *Id*, ¶ 13.

Defendants counter by citing *Watts v. Rubber Tree*, 121 Or App 21, 853 P2d 1365 (1993), which concluded that because the defendant was a "service provider," and not a seller, it could not be held liable under ORS 30.920. In that case, the defendant applied tread to a tire casing provided by plaintiff's employer, but did not provide any defective parts as part of its retreading service. "The uncontradicted evidence is that defendant did not charge for the casing that was defective. Sweeping, the owner of the casing, asked defendant to perform service on it. None of the parts sold by defendant in conjunction with the service was defective." *Id* at 23, 853 P2d at 1365. Defendants assert that, like the defendant in *Watts*, Legacy was merely a "service provider" with respect to Jon Snyder's operation and, therefore, cannot be held liable under Oregon's product liability statute as a seller.

Although defendants Davol and Bard acknowledge that Oregon has not specifically addressed whether a hospital is a mere "service provider" for medical implants provided as part of its surgical treatment services, they cite a host of cases from other jurisdictions[3] which they assert stand for that proposition and argue that Oregon courts would follow the reasoning of

---

[3] *See* cases cited in Defendants' Memorandum of Law in Support of Defendant Davol Inc. and C.R. Bard Inc.'s Opposition to Plaintiffs' Motion to Remand (docket # 16), pp. 3-5, and Defendants' Supplemental Authority in Opposition to Plaintiffs' Motion to Remand (docket # 29), p. 4, n2.

10 - FINDINGS AND RECOMMENDATIONS

those courts in deciding this issue. The clear trend of other jurisdictions to disallow strict product liability claims against hospitals and medical practitioners is evident in an annotation on the subject. *See*, Linda A. Sharp, Annotation, *Liability of Hospital or Medical Practitioner Under Doctrine of Strict Liability in Tort, or Breach of Warranty, for Harm Caused by Drug, Medical Equipment, or Similar Device Used in Treating Patient*, 65 ALR 5th 357 (1999). Although cases from a few jurisdictions allowed claims for strict products liability, those cases have either been overruled,[4] turned on interpretation of a specific state medical malpractice statute supported by legislative history favoring such claims,[5] or involved a defendant who was involved in the manufacturing process.[6]

Despite the clear weight of authority from other jurisdictions in their favor, the procedural posture of this case gives plaintiffs the upper hand. There simply is no definitive ruling from any Oregon appellate court as to the viability of a strict products liability claim against a hospital for an allegedly defective device implanted during the course of a procedure at the hospital facilities. As noted above, the burden of proving fraudulent joinder rests squarely on defendants' shoulders; uncertainties as to controlling law must be resolved in plaintiffs' favor; and where there is "even a possibility" of a claim, the plaintiff is entitled to remand. *Boyer*, 913 F2d at 111. Against that legal landscape, and given the lack of controlling Oregon law, this court is duty-bound to remand this case to state court.

---

[4] *See Brandon v. Southeast Missouri Hosp., Inc.*, 926 $SW2^{nd}$ 113, Prod Liab Rep (CCH) P14,643 (Mo App ED 1996), overruled by *Budding v. SSM Healthcare Sys.*, 19 SW3rd 678, Prod Liab Rep (CCH) P15,892 (Mo 2000).

[5] *See Huffaker v. ABC Ins. Co.*, 659 $So2^{nd}$ 544 (La Ct App 4th Cir 1995).

[6] *See Phillips v. Orentreich*, 1995 WL 351532, Prod Liab Rep (CCH) 14,285 (SDNY 1995) (pamphlet distributed by physician stated that the "liquid silicone . . . used in this office . . . is made by us. . . . We pharmaceutically convert this material to a medical grade silicone.").

11 - FINDINGS AND RECOMMENDATIONS

For these reasons, this court's "preliminary assessment suggests that removal was improper." *Meyers*, 143 FSupp2d at 1049. As a result, this court agrees with plaintiffs that it need not proceed past the first step in the *Meyers* analysis and that remand is required.[7]

## II. **Procedural Misjoinder**

Defendants Davol and Bard also assert that, even if this court does not find fraudulent joinder, it should nevertheless disregard the citizenship of Legacy for purposes of its jurisdictional analysis. This argument is based on the contention that the negligence (medical malpractice) claim against Legacy (Second Claim) is "misjoined" because it arises out of transactions and/or occurrences (conduct after the recall notice) separate and apart from those that give rise to plaintiffs' strict product liability claims (conduct before the recall notice). Consequently, defendants argue that the negligence claim against Legacy should be severed from this action.

"Procedural misjoinder" involves a "'purposeful attempt to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard.'" *Leif's Auto Collision Centers v. Progressive Halcyon Ins. Co.*, 2006 WL 2054552 *2 (D Or July 21, 2006), *quoting Conk v. Richards & O'Neil, LLP*, 77 F Supp 2d 956, 971 (SD Ind 1999). The elements of and standards for evaluating assertions of procedural misjoinder are far from clear and have not been addressed by the Ninth Circuit. *Id* at

---

[7] As an additional ground for remand, plaintiffs argue that Legacy did not join in or consent to the removal. When there is an allegation of fraudulent joinder, the rule of unanimity does not apply: "Although the usual rule is that all defendants in an action in state court must join in a petition for removal, . . . the rule of unanimity does not apply to nominal, unknown, or fraudulently joined parties." *United Computer Systems, Inc. v. AT&T Corp.*, 298 F3d 756, 762 (9th Cir 2002) (citations and internal quotation marks omitted). This court concludes that defendants Davol and Bard have failed to establish that Legacy was fraudulently joined, which arguably means that the rule of unanimity would apply. However, because it also means that remand is required, it moots this alternative argument.

12 - FINDINGS AND RECOMMENDATIONS

*3. Nevertheless, "[a]ll courts that have considered the doctrine agree that procedural misjoinder may exist only when claims against diverse defendants have no real connection to the claims against non-diverse defendants such that joinder of the parties is improper under the applicable permissive joinder rule." *Id* at *3, *citing Triggs v. Crump Toyota*, 154 F3d 1284, 1289-90 (11th Cir 1998). Assuming for the sake of argument that procedural misjoinder is an available doctrine in the Ninth Circuit, the record reveals no basis on which to conclude that the claims against Legacy are misjoined with those against Davol and Bard.

The hub of the wheel driving plaintiffs' claims is a medical device. Its design, manufacture, distribution, sale, implantation, catastrophic failure, and recall present a series of related transactions and occurrences. Oregon law will require the factfinder to compare the relative fault of each party who had a hand in those occurrences and evaluate the damages, if any, flowing from each party's involvement. As did the court in *Leif's Auto Collision Centers*, this court concludes that plaintiffs have properly joined the claims against defendants Davol and Bard with those against defendant Legacy, making procedural misjoinder inapplicable.

## **CONCLUSION**

As discussed above, this court finds that defendants Davol and Bard have not met their burden of proving fraudulent joinder of defendant Legacy and, therefore, this case was not properly removed to this court in the first instance. This court also concludes that the doctrine of procedural misjoinder is inapplicable. Accordingly, this court recommends remand of this case to state court.

This court recognizes that the overwhelming majority of state courts have concluded that no strict products liability claim may be alleged against a hospital absent legislative history

clearly contemplating such a claim or evidence that the hospital was actively involved in the manufacture or distribution of the allegedly defective device. However, no Oregon appellate court has yet addressed this issue. Where, as here, the propriety of removal hinges on a theory of fraudulent joinder, this court may not theorize about how Oregon courts might rule on whether strict product liability claims will lie against a hospital, and if so, under what circumstances. Instead, this court is required to leave the decision as to the viability of the strict product liability claim to the state courts.

After remand, defendants may succeed in convincing the state court to dismiss the product liability claim alleged against Legacy (First Claim), leaving only diverse defendants to respond to allegations of product liability (Third Claim). The ability of defendants Davol and Bard to again remove the case to federal court would then depend on the state court's willingness to sever the remaining negligence claim alleged against Legacy (Second Claim) from the product liability and negligence claims alleged against Davol and Bard (Third and Fourth Claims). Although this sort of procedural rebounding seems nonsensical, it is nevertheless dictated by the standards governing cases removed to this court on fraudulent joinder grounds.

## RECOMMENDATIONS

Upon review of the entire record, this court concludes that remand is appropriate. Thus, plaintiffs' Motion to Remand Case to State Court (docket # 11) should be GRANTED and defendants' Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation (docket # 6) should be DENIED AS MOOT. Accordingly, this case should be remanded to Multnomah County Circuit Court (*Jon Snyder and Linda Snyder v.*

*Davol, Inc.; C.R. Bard, Inc.; and Legacy Health System, dba Meridian Park Hospital*, Multnomah County Civil Case No. 0705-05853).

**SCHEDULING ORDER**

Objections to the Findings and Recommendations, if any, are due **November 13, 2007**. If no objections are filed, then the Findings and Recommendations will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will be referred to a district judge and go under advisement.

DATED this 24th day of October, 2007.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge